

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-18-2006

# Rolan v. Vaughn

Precedential or Non-Precedential: Precedential

Docket No. 04-4322

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Rolan v. Vaughn" (2006). *2006 Decisions.* Paper 1181.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1181

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 04-4322

———————

FLORENCIO ROLAN,

v.

DONALD T. VAUGHN, State Correctional
Institution-Graterford; THE DISTRICT ATTORNEY
OF PHILADELPHIA,

Appellants.

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 01-cv-00081)
District Judge:  Hon. Berle M. Schiller

———————

Argued on November 7, 2005

BEFORE:  ROTH, FUENTES and GARTH,

Circuit Judges

(Opinion Filed: April 18, 2006)

_____

Samuel W. Silver, Esquire
Bruce P. Merenstein, Esquire (ARGUED)
Schnader, Harrison, Segal & Lewis
1600 Market Street - Suite 3600
Philadelphia, PA  19103

     Attorneys for Appellee

Helen T. Kane, Esquire (ARGUED)
Office of the District Attorney
Three South Penn Square
Philadelphia, PA  19107

     Attorney for Appellants

_____

OPINION OF THE COURT

_____

**ROTH**, Circuit Judge:

The Commonwealth of Pennsylvania has appealed the District Court's grant of the writ of habeas corpus to Florencio

Rolan. For the reasons stated below, we will affirm.

## I. Background

Florencio Rolan was convicted in Pennsylvania state court of first-degree murder and of possession of an instrument of crime for the 1983 death of Paulino Santiago. The Commonwealth's theory of the crime was that Rolan shot and killed Santiago during an attempted robbery of the proceeds of a five-dollar drug deal. Rolan was sentenced to death by a jury, but in 1997 the Pennsylvania post-conviction relief court vacated the sentence, holding that Rolan's attorney provided ineffective assistance during the penalty phase of the trial. In 2003, the penalty phase was retried and, following a unanimous jury verdict, Rolan was re-sentenced to life imprisonment. Rolan then brought a federal habeas action under 28 U.S.C. § 2254, alleging that he also received ineffective assistance of counsel at the guilt stage of his original trial.

The crux of Rolan's ineffective assistance claim was that his trial counsel, Melvin Goldstein, failed to investigate two witnesses who would have supported Rolan's self-defense claim. As a result, Goldstein never called the witnesses to testify at trial. Rolan also alleged ineffective assistance of counsel because Goldstein prevented Rolan from testifying on his own behalf and because Goldstein did not properly cross-examine Francisco Santiago, the prosecution's key witness, concerning a deal with the Commonwealth for his testimony.

Rolan's version of events, which corroborates his self-defense claim, is that he and his cousin, Robert Aponte, were involved in a dispute with brothers, Paulino and Francisco Santiago, over the proceeds of a petty drug sale. A buyer drove by the street corner on which Rolan, Aponte, and the Santiago brothers were selling marijuana. The driver held out a five dollar bill, and Paulino Santiago and Aponte both tossed a "nickel bag" of marijuana into a car. Paulino grabbed the bill as the driver drove away with the two bags, leaving Paulino and Aponte to resolve their claims to the money. In the ensuing dispute Rolan sided with Aponte, and Francisco Santiago with his brother, Paulino.

According to Rolan, at some point during the argument, an intoxicated Paulino grew angry and walked away, and Francisco went to urinate in an abandoned building in which neighborhood residents kept guns and drugs. Rolan followed Francisco into the building to continue discussing the payment incident. Paulino then entered the building. He was carrying what Rolan believed to be a knife, shouted a threat at Rolan, and charged at him. Rolan claims that he noticed a loaded rifle lying nearby, picked it up in time, and felled Paulino with a single shot.

Prior to trial, Goldstein and Rolan spoke on two occasions for short periods of time. Goldstein asked Rolan whether there were any people with whom he should speak about the crime. Rolan provided two names: Robert Aponte and Daniel Vargas. Goldstein wrote a letter to the prosecutor's office in which he disclosed these names as potential alibi (rather than self-defense) witnesses in accordance with

-4-

Pennsylvania law. See PA. R. CRIM. P. 573 (formerly R. 305). Rolan claims that he did not tell Goldstein that Vargas and Aponte were alibi witnesses but instead that he wanted to call them in furtherance of his self-defense claim.

There is no indication that Goldstein ever attempted to contact Vargas or Aponte. A detective for the Commonwealth did, however, interview them. Vargas refused to cooperate with the detective. The detective reported that Vargas knew absolutely nothing about Rolan and was not an alibi witnesses. When Aponte was interviewed, he told the detective that "[a]s I started walking home [after the shooting] I saw my cousin [Rolan] and I asked him was he alright, [Paulino Santiago] didn't stab you or anything."[1]

For reasons that are not clear from the record, the prosecution initially did not disclose having interviewed Aponte, stating on the eve of trial that he could not be found. At the close of the case, the prosecution did admit that detectives had interviewed Aponte, but reported that he was not an alibi witness and that neither Vargas nor Aponte knew anything about Paulino Santiago's death. Goldstein did not dispute the prosecution's claim.

At trial, the Commonwealth presented evidence that

---

[1] Rolan asserts that this establishes that Aponte believed Paulino Santiago was armed with a knife at the time of his death; thus, Aponte's statement bolstered Rolan's claim that Paulino Santiago charged him with a knife.

-5-

Rolan killed Paulino Santiago after following him into an abandoned house with the intention of robbing him of the five dollars from the drug deal. The main witness for the state was Francisco Santiago, who testified that he and Paulino were in the abandoned house when Rolan burst in carrying a 3-foot rifle and demanded that Paulino give him the drug money. According to Francisco, Rolan then fired a single shot to Paulino's chest, killing him. Francisco further testified that Rolan fled out of the back of the house and down an alley.[2] Francisco was given immunity from prosecution for the drug activities described in the testimony and other charges related to his brother's murder. At trial, the prosecution stated that the only thing the Commonwealth gave in exchange for Francisco's testimony was a letter to the Parole Board to let them know that Francisco had cooperated in the investigation and trial. This misrepresentation was never corrected by the Commonwealth or challenged by Goldstein.

The Commonwealth also called Edwin Rosado. Rosado's testimony was largely inconsistent with Francisco's account. Rosado claimed to have heard Paulino and Rolan arguing over a woman and stated that Rolan entered the house, without a weapon, *before* Paulino. Rosado then heard a single shot and saw Paulino emerge from the front of the house, at

---

[2] Francisco had told investigators at the crime scene that he had no first-hand knowledge of the events surrounding the death of Paulino. Rolan complains that Goldstein failed to investigate this inconsistency or to cross-examine Francisco on it at trial.

which point Francisco came to aid his brother – but not from inside the house, as Francisco claimed.

Rolan pressed his attorney in open court to call Vargas and Aponte after Goldstein said he had no witnesses to call on Rolan's behalf. Rolan declared, "Yes, I have two other witnesses who are willing to come and testify." Goldstein explained to the court that Rolan was referring to Vargas and Aponte but that neither were alibi witnesses. After some wrangling between counsel and the court, Goldstein refused to call the witnesses. The jury returned a verdict of guilty and sentenced Rolan to death. Melvin Goldstein died while the direct appeal of Rolan's conviction was pending. After the direct appeal was denied, Commonwealth v. Rolan, 549 A.2d 553 (1988), Rolan sought post-conviction collateral relief under Pennsylvania's Post Conviction Relief Act (PCRA), 42 PA. CONS. STAT. ANN. § 9541 et seq. In the meantime, Robert Aponte died.

In 1997, the Pennsylvania Court of Common Pleas held an evidentiary hearing on Rolan's PCRA petition. At the hearing, Vargas testified that he was never asked to testify on behalf of Rolan but would have testified if he had been asked to do so. Vargas also stated that the detective asked him to testify *against* Rolan and that he did not voluntarily go to the police with his knowledge of the case "because at that time [he] didn't want to get involved in that ... because the families was [sic] hurt and [he] knew both families." Vargas also testified at the PCRA hearing that, when Rolan went into the abandoned house, he was not carrying anything except a quart of beer; Francisco followed Rolan into the house; then Paulino came around the

-7-

corner carrying a kitchen knife; Paulino went into the house after Rolan, screaming, "I'll kill you, motherfucker!" Vargas then heard a shot. When Vargas went into the house with Aponte, Paulino was lying on the ground and there was a knife at his feet.

On cross-examination, the Commonwealth questioned Vargas concerning his recalcitrance when interviewed by detectives before Rolan's criminal trial. The Commonwealth noted that the detective who interviewed Vargas gave him a piece of paper that said "You're being questioned concerning a possible alibi witness for the defendant Florencio Rolan. Are you willing to give a statement to the District Attorney's Office." Vargas, who stated that he understood "alibi" to mean "lie," testified that he thought this meant that the detective had approached him to testify against Rolan.

The PCRA trial court found that Goldstein's assistance was constitutionally defective during the penalty phase of Rolan's trial and vacated the death sentence but held that Rolan had waived his claims regarding the guilt phase of his trial. The court nevertheless reviewed Rolan's claims regarding the guilt phase for purpose of providing the state appellate court with a complete record. Although its analysis was brief and conclusory, the PCRA trial court rejected Rolan's ineffectiveness claims. See Commonwealth v. Rolan, Nos. 2893-2896, slip op. (C.P. Phila. Feb. 4, 1998).

Rolan appealed the denial of PCRA relief as to his guilt

to the Pennsylvania Superior Court. The Superior Court held that the Court of Common Pleas erred in finding that Rolan's claims for ineffective assistance were waived. It then proceeded to the merits and rejected the claims both because the court was unable to "conclude that Vargas was willing to appear on Rolan's behalf at trial" and because Aponte's statements were irrelevant to the self-defense claim. The court declared that Aponte's statement "establishes merely that Aponte was aware that Rolan had engaged in an altercation and was not immune to the potential danger posed by life on the street. Any suggestion that Aponte's question establishes his awareness that the victim had actually attempted to stab Rolan is entirely unsubstantiated." The Superior Court also found that Goldstein was not ineffective as counsel for interfering with Rolan's right to testify because Rolan's decision was knowing and voluntary. In addition, although the Superior Court conceded that the prosecution should have articulated to the jury the details of its deal with Francisco, its failure to do so did not so undermine the truth-determining process as to require a new trial. See Commonwealth v. Rolan, No. 4591 Phila. 1997, slip op. (Pa. Super. Ct., June 9, 1999).

Rolan then filed his federal habeas petition under 28 U.S.C. § 2254. The District Court exercised jurisdiction under 28 U.S.C. §§ 2241(a) and 2254(a). The District Court granted Rolan's habeas petition pursuant to § 2254 because of Goldstein's ineffective assistance of counsel. Claims of ineffective assistance of counsel are reviewed under the two-part test of Strickland v. Washington, which examines whether assistance was ineffective and, if so, whether it prejudiced the defendant. 466 U.S. 668 (1984). The District Court concluded

-9-

that there was no finding of fact on Vargas's willingness to
testify to which it was required to defer under the Anti-
Terrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C.
§ 2241 et seq., because the "finding" was made by the PCRA
appellate court rather than by the PCRA trial court as required
by Pennsylvania post-conviction procedure. The District Court
then conducted an evidentiary hearing at which Vargas testified,
and credited Vargas's testimony that he would have testified if
he had been called on Rolan's behalf at trial. Having rejected
the state court's prejudice analysis, the District Court proceeded
to Strickland's ineffectiveness prong and concluded that
Goldstein's performance was unconstitutionally defective
because he failed to conduct any pretrial investigation. This
meant that his decision to forgo the self-defense claim was not
a strategic choice entitled to a presumption of validity.
Strickland, 466 U.S. at 690-91. The District Court rejected or
did not address Rolan's other claims of constitutional error.

The Commonwealth of Pennsylvania appealed. We have
jurisdiction over the appeal under 28 U.S.C. §§ 1291 and
2253(c)(1)(A). We undertake a plenary review over a district
court's grant of habeas corpus, Duvall v. Elwood, 336 F.3d 228,
229 (3d Cir. 2003), and review any factual findings resulting
from the district court's evidentiary hearing for clear error, Love
v. Morton, 112 F.3d 131, 133 (3d Cir. 1997).

**II. Discussion**

This appeal by the Commonwealth presents several issues: (1) Did the District Court err in failing to defer to the Superior Court's appellate factual determination that Vargas was unwilling to testify at trial; (2) Did the District Court err in holding an evidentiary hearing to determine whether Vargas was willing to testify at the guilt phase of Rolan's trial; (3) Did the District Court err in holding that Rolan's trial counsel was ineffective for failing to investigate the potential self-defense witnesses. First, however, we must determine whether the PCRA courts considered Rolan's claims on the merits so that AEDPA applies to the District Court's consideration of this habeas petition.

**A. Does AEDPA Apply to the District Court's Determination to Grant Habeas Relief?**

To determine whether AEDPA, 28 U.S.C. § 2241 et seq., applies to Rolan's claim of ineffective assistance of counsel, it is necessary to assess whether the Pennsylvania state courts adjudicated the claim on the merits. Everett v. Beard, 290 F.3d 500, 507-08 (3d Cir. 2002). On appellate review of Rolan's PCRA petition, the Pennsylvania Superior Court concluded that Rolan was not prejudiced by his attorney's failure to interview Vargas, a possible self-defense witness, because Rolan could not establish that Vargas was willing to testify on Rolan's behalf at trial. A court can choose to address the prejudice prong before the ineffectiveness prong and reject an ineffectiveness claim solely on the ground that the defendant was not prejudiced. See Strickland, 466 U.S. at 668. Here, because the PCRA appellate

-11-

court found that Vargas was not willing to testify at the guilt phase of Rolan's trial, its decision to deny habeas relief on that basis constituted an adjudication on the merits.  See Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004), rev'd on other grounds, Rompilla v. Beard, 125 S. Ct. 2456 (2005).  Therefore, AEDPA applies to Rolan's habeas petition.

AEDPA limits a federal court's authority to grant habeas relief when a state court has previously considered and rejected the federal claim on the merits.  28 U.S.C. § 2254(d).  If the petitioner's legal claims were presented but not addressed by the state courts, 28 U.S.C. § 2254(d) does not apply, and federal courts undertake a *de novo* review of the claim.  Everett, 290 F.3d at 507-08.

If AEDPA does apply, however, the writ cannot be granted unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §§ 2254(d)(1)-(2).

-12-

AEDPA also has a provision relating specifically to a federal court's review of state court factual findings:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a state court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

These limitations on review of the state courts' factual findings applied to the District Court's consideration of Rolan's petition and also to our review here.

### B. The District Court Erred in Failing to Defer to the Pennsylvania PCRA Appellate Court's Findings of Fact.

The District Court declined to defer to the Pennsylvania Superior Court's factual determination at the appellate level that Vargas was not willing to testify on Rolan's behalf at the guilt stage of Rolan's criminal trial. The District Court, citing Campbell v. Vaughn, 209 F.3d 280, 287-88 (3d Cir. 2000), first determined that, according to Pennsylvania post-conviction review procedure, an appellate court should remand a case to the PCRA trial court for factual determinations rather than make them in the first instance. Because the Superior Court made its

decision upon review of the cold record from the PCRA trial court, rather than remanding, the District Court did not believe that it was bound to defer.

When earlier presented with this issue of deference to appellate factual findings in Campbell, we specifically declined to rule on whether a federal court must defer to a Pennsylvania PCRA appellate court's finding of fact made on a cold appellate record. 209 F.3d at 288.

Generally, federal courts defer to state appellate court determinations of fact. In Sumner v. Mata, the Supreme Court addressed whether a federal court should defer to state appellate court determinations of fact. 449 U.S. 539, 545-46 (1981). In that pre-AEDPA case, the California Court of Appeal made the factual determinations at issue after review of the trial court record. Id. at 546. The Supreme Court held that state appellate court fact finding should receive deference on habeas review because "[§ 2254(d)] makes no distinction between the factual determinations of a state trial court and those of a state appellate court." Id. Moreover, important interests in comity and federalism require deference to factual determinations made by "all state courts." Id.

Similarly, in Dickerson v. Vaughn, we reviewed a habeas petition following a Pennsylvania PCRA proceeding. 90 F.3d 87 (3d Cir. 1996). In that case, the PCRA trial court made findings of fact following an evidentiary hearing. Id. at 90. On review, the PCRA appellate court specifically rejected these findings "based on the same record." Id. Dickerson cited both Sumner and Parke v. Raley, 506 U.S. 20, 36 (1993), for the

proposition that § 2254 draws no distinction between state trial and appellate court factual determinations. 90 F.3d at 90.

> When there are conflicting findings by state courts, we believe that according proper deference requires us to accept the version reached by the higher court. To rule otherwise would be to insert our Court into the state appellate system and take onto ourselves the role entrusted to the state Superior Court.

Id. As we felt bound in Dickerson to defer to the state appellate court's determination of fact that was contrary to the state trial court's determination, the District Court here was bound to defer to the PCRA appellate court's factual determination, even though the PCRA appellate court made that determination in the first instance.

Our discussion of deference to state court factual determinations in Lambert v. Blackwell, 387 F.3d 210 (3d Cir. 2004), also supports the conclusion that the District Court should have deferred to the PCRA appellate court's determination that Vargas was not willing to testify at Rolan's trial. The habeas petitioner in Lambert argued that the factual findings of the PCRA trial court and the PCRA appellate court were not entitled to deference because those courts lacked jurisdiction to hear the petition. Id. at 236.

We began our analysis in Lambert by noting that "AEDPA does not provide that a federal habeas court should, before affording deference to state court determinations, evaluate the procedural adequacy of state court proceedings or

-15-

whether the state court properly exercised its jurisdiction." Id.
at 237. AEDPA, unlike prior law, has no requirement that the
state court hold a hearing or comply with other prerequisites to
deference listed in the previous habeas statute. Id. at 238-39.
Thus, after AEDPA, state fact-finding procedures may be
relevant when deciding whether the determination was
"reasonable" or whether a petitioner has adequately rebutted a
fact, but the procedures are not relevant in assessing whether
deference applies to those facts. Id. at 239. In Lambert, we
deferred to the findings of fact from state proceedings even
though the District Court found that the Pennsylvania courts
lacked jurisdiction under *Pennsylvania* law. Id. "Whatever our
residual ability to examine state court jurisdiction in other
instances, the exercise of jurisdiction by the state court in this
instance does not call into question the adequacy of the state
court proceeding under section 2254(d) and (e)." Id.

Even though Lambert focused on the question of
jurisdictional adequacy, its reasoning is informative in this case.
Here, the District Court declined to defer to the PCRA appellate
court's factual determinations based on the PCRA trial court's
record because, under Pennsylvania law, the PCRA appellate
court should have remanded the case. While this may be an
accurate assessment of Pennsylvania law, the District Court
should have deferred, despite the apparent procedural mistake,
unless the District Court was prepared to find that the failure
went so far as to impugn the integrity of the entire proceeding –
something it clearly was not prepared to do, given its decision
to apply AEDPA. Therefore, conforming with our sister circuits
that have addressed the issue, see, e.g., Mason v. Mitchell, 320
F.3d 604, 614 (6th Cir. 2003) (citing Sumner, 440 U.S. at 546-

-16-

47); Turner v. Crosby, 339 F.3d 1247, 1273 (11th Cir. 2003); Avila v. Roe, 298 F.3d 750, 753 (9th Cir. 2002), we hold that a district court judge must defer to state appellate court fact-finding.

The fact that the District Court erred in declining to defer to the PCRA appellate court's factual determination does not, however, warrant reversal in and of itself. But as we proceed to the next step, we confront the fact that it was the District Court's determination that it need not defer to the Superior Court's fact finding that allowed the District Court, under AEDPA, to hold an evidentiary hearing; the testimony by Daniel Vargas at that hearing, consistent with his testimony and affidavit at the PCRA hearing, was cited by the District Court in determining that Vargas would have been willing to testify.

The ability of a federal district court to hold an evidentiary hearing in habeas review is limited under AEDPA. The Commonwealth argues that, pursuant to 28 U.S.C. § 2254(e)(2), the District Court should not have undertaken an evidentiary hearing and that the PCRA appellate court's determination of facts was reasonable based on the evidence before it. Section 2254(e)(2) would apply, however, only if Rolan had failed to develop the factual basis for his claim in his state court PCRA proceedings.[3] Section 2254(e)(2) simply does

_____

[3]    28 U.S.C. § 2254(e)(2) provides:
        If  the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on

-17-

not apply to this case because Rolan did develop the factual basis for his claim in the state court.

The District Court held an evidentiary hearing because, under its incorrect reading of the record, there were no legitimate state court findings of fact concerning Vargas' willingness to testify. As discussed above, the District Court wrongly determined that the Superior Court factual findings could not be recognized because they were made in contravention of Pennsylvania law. Thus, we cannot support the holding of the hearing on the basis relied on by the District Court.

---

the claim unless the applicant shows that–
    (A) the claim relies on–
    (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
    (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
    (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

*See also* <u>Lambert v. Blackwell</u>, 387 F.3d 210, 234-36 (3d Cir. 2004).

-18-

This conclusion sends us back to the review that the District Court should then have undertaken. After concluding that there were state court findings of fact, the District Court should have reviewed those findings to ascertain whether or not they were reasonable. Because the District Court did not do so, we will, based on the PCRA record before the District Court.

### C. Were the Superior Court's Factual Findings on Vargas's Unwillingness to Testify Unreasonable?

Our reading of the PCRA court records convinces us that the Superior Court made an unreasonable finding of fact. The Superior Court's finding that Vargas was not willing to testify on behalf of Rolan was objectively unreasonable because it was not supported by the record. The Superior Court concluded that Vargas was unwilling to testify *on behalf of Rolan* based on Vargas's unwillingness to cooperate with a detective. The court conflated Vargas's unwillingness to cooperate with the police with a purported unwillingness to testify for the defendant. The court then discredited Vargas's testimony and affidavit that he would have testified for Rolan had Goldstein called him.

Contrary, however, to the Superior Court's conclusion, the exchange between Vargas and the detective is not probative of whether Vargas would have testified *on Rolan's behalf* in 1984 if asked to do so by Goldstein. It demonstrates only that he would *not* testify for the prosecution. The sole evidence before the PCRA courts on the issue of testifying *for* Rolan is Vargas's testimony and affidavit that he would do so. Therefore, the Superior Court's finding of fact that Vargas would *not* have testified *for* Rolan was not supported by the

-19-

record. Indeed, because Vargas's testimony and affidavit establishes that Vargas would testify *for* Rolan and there is no evidence that Vargas would *not* testify *for* Rolan, it was unreasonable for the Superior Court to find that Vargas was *unwilling* to testify *for* Rolan. From our examination of the record, we find that Rolan rebutted the conclusion of the Superior Court by clear and convincing evidence. The PCRA record was sufficient to support this finding of unreasonableness and the District Court hearing was superfluous.

### D. Was Trial Counsel Ineffective for Failing to Investigate Potential Self-Defense Witnesses?

Because we are not bound by the unreasonable factual finding that led the Superior Court to determine that Rolan was not prejudiced by Goldstein's failure to investigate Vargas and Aponte as witnesses in support of Rolan's self-defense claim, we can proceed with the review of whether Goldstein was ineffective in his representation of Rolan. In Strickland, the Supreme Court articulated a two-pronged test for ineffective assistance of counsel claims. 466 U.S. 668. A habeas petitioner must show "(1) that counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's error, the result would have been different." United States v. Nino, 878 F.2d 101, 103 (3d Cir. 1989).

### 1. Objective Reasonableness

Strickland and its progeny make clear that counsel's strategic choices will not be second-guessed by *post-hoc*

-20-

determinations that a different trial strategy would have fared better. 466 U.S. at 689. However, there is a prerequisite to this rule's application. Only choices made after a reasonable investigation of the factual scenario are entitled to a presumption of validity. Id. at 690-91. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. Thus, our inquiry must begin by assessing the objective reasonableness of Goldstein's failure to interview both Vargas and Aponte.

Failure to conduct any pretrial investigation is objectively unreasonable. E.g., United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989). The District Court noted that Goldstein never attempted to contact either Vargas or Aponte after Rolan gave Goldstein their names. Goldstein did turn their names over to the prosecution as potential *alibi* witnesses, as required by Pennsylvania law, but after the prosecution told Goldstein that they were not alibi witness, Goldstein made no attempt to determine whether they might have other information potentially valuable to the defense. Although the decision to forgo a self-defense claim is of the type that may be entitled to a presumption of validity, Goldstein's decision not to present the defense cannot be according the normal deference to strategic choices because it was uninformed. See United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997). Thus, we conclude that Goldstein's representation of Rolan fell below the objective standard of reasonableness.

## 2. Prejudice

-21-

In order to show Strickland prejudice, Rolan must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. We have defined a reasonable probability as a probability "sufficient to undermine confidence in the outcome." Hull v. Kyler, 190 F.3d 88, 110 (3d Cir. 1999). Rolan's "showing may not be based on mere speculation about what the witnesses [that counsel] failed to locate might have said." Gray, 878 F.2d at 712. Rather, it must be made based on the potential witness's testimony to the habeas court. Id. Furthermore, in considering whether a petitioner suffered prejudice, "[t]he effect of counsel's inadequate performance must be evaluated in light of the totality of the evidence at trial: 'a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.'" Id. at 710-711 (quoting Strickland, 466 U.S. at 696).

The PCRA appellate court relied upon a lack of prejudice in dismissing Rolan's state post-conviction claim of ineffective assistance. The court found that Rolan was not prejudiced because he could not establish that Vargas was willing to testify on his behalf at trial. Moreover, it found that Rolan was not prejudiced by the failure of Goldstein to call Aponte because "Aponte's testimony was not relevant" to Rolan's self-defense claim.

As discussed above, the PCRA appellate court's finding that Vargas was not willing to testify at trial is not supported by the record and is in contradiction to Vargas's affidavit. Had Goldstein called Vargas to testify at trial, Vargas stated he

-22-

would have given the testimony on behalf of Rolan that he did before the PCRA trial court: There was a dispute over drug money between Aponte, Rolan, and the Santiago brothers; in the course of the dispute, Rolan followed Francisco into the abandoned building; Rolan was carrying only a quart of beer; Paulino came around the corner wielding a kitchen knife and ran up the steps of the abandoned building after Rolan, screaming "I'm going to kill you, motherfucker!"; Vargas then heard a shot and when he and Aponte entered the building they saw Paulino lying alone on the ground with a knife at his feet.

Vargas's testimony would have bolstered Rolan's affirmative defense and undermined the prosecution's claims of a pre-meditated murder during a robbery. As the District Court noted, "[t]hese facts were crucial to refute the prosecution's theory that Rolan entered the house intending to kill Paulino during the commission of a robbery."

Vargas's testimony also shows the relevance of Aponte's testimony, had he been called by Goldstein. We do not and cannot know what Aponte would have stated had he lived to testify before a habeas court; his statement to the detective is not admissible itself as double hearsay. See FED. R. EVID. 805. Nonetheless, we note that Aponte's statement to the police bolsters Vargas's testimony to the PCRA trial court and indicates that Aponte believed that Paulino Santiago was armed with a knife and that Paulino attempted to assault Rolan. Had Aponte testified to this, it would have conformed with Vargas' testimony and supported Rolan's self-defense claim as well as undermined the prosecution's theory of the case.

-23-

Vargas's testimony alone, much less in conjunction with Aponte's, would have substantiated Rolan's self-defense claim and undermined the Commonwealth's witnesses. Goldstein's failure to investigate Vargas and Aponte as witnesses precluded him from calling them to testify, and thus prejudiced Rolan because the jury never heard evidence that supported this alternative account of the killing. While we marvel at Rolan's serendipitous rifle, we note that there were significant contradictions among the Commonwealth's witnesses. We believe that Rolan's conviction was only "weakly supported by the record" and that the testimony of Vargas (and Aponte) is "sufficient to undermine confidence in the outcome." Gray, 878 F.2d at 710-11, 712. Therefore, it is manifest that the Superior Court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the PCRA trial court proceeding. 28 U.S.C. § 2254(d)(2).

**V. Conclusion**

Because we conclude that the Superior Court's findings of fact on Vargas's unwillingness to testify were unreasonable and that, when looked at under the Strickland standard, Rolan's attorney's failure to investigate self-defense witnesses fell below an objective standard of reasonableness, and that there is a reasonable probability that but for that failure the result would have been different, we will affirm the grant of the writ of habeas corpus by the District Court.