

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-22-2006

# USA v. Daniels

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1553

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Daniels" (2006). *2006 Decisions.* Paper 37.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/37

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————

No. 05-1553

—————

UNITED STATES OF AMERICA

v.

BRIAN N. DANIELS,
                    Appellant

—————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
D.C. Crim. No. 99-cr-00292-1
District Judge:  The Honorable James F. McClure, Jr.

—————

Argued:  November 6, 2006

—————

Before: SCIRICA, Chief Judge, BARRY and ALDISERT, Circuit Judges

—————

(Filed: December 22, 2006)

—————

Enid W. Harris, Esq. (Argued)
Harris & Van Jura
26 Pierce Street
Kingston, PA   18704

Counsel for Appellant

Theodore B. Smith, III, Esq. (Argued)
Office of the United States Attorney
228 Walnut Street
P.O. Box 11754
220 Federal Building & Courthouse
Harrisburg, PA 17108

Counsel for Appellee

---

OPINION

---

BARRY, Circuit Judge

Appellant Brian Daniels appeals from a final order of the District Court denying his motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. We previously affirmed, on direct appeal, Daniels's conviction for violent crime in aid of racketeering. We now find that even if we erred, there is no manifest injustice given the concurrent sentence imposed for that conviction. Accordingly, we will affirm.

## I.

Darnell Doss was a supplier of illegal narcotics in the State College, Pennsylvania area. He employed his girlfriend, Rachel Brooks, and another young woman, Linden Levey, as dealers. Levey and Brooks shared an apartment in State College. In late June 1999, following a series of police raids on houses out of which Doss sold drugs, Doss went to Levey's and Brooks's apartment and complained that he was "broke." On several occasions, he stated that he wanted to find someplace from which he could steal large

2

quantities of drugs and cash to revive his faltering drug trafficking business.

On June 30, 1999, Daniels accompanied his cousin, Eugene Randolph (a/k/a Eugene Sales), to a party at Levey's and Brooks's apartment. There, Daniels was introduced to Levey, Brooks, Doss, Donald Shank, Sara Eksteen, and Tamara Billet. They all smoked marijuana and drank, and Doss again expressed his desire to rob someone—he needed to make a "come up," which meant that he needed to acquire a large amount of money in a short period of time. There is no evidence, however, that Doss explicitly stated in Daniels's presence that the reason Doss needed money was to shore up his drug trafficking business.

In response to Doss's inquiries, Shank stated that he knew of an apartment in "the Lofts" at University Terrace containing a large amount of marijuana and cash in a safe. Levey recalled that this apartment was said to contain $10,000 in cash and eight pounds of Kind Bud marijuana, a stronger variety of marijuana with a high street value.[1] Eksteen told Doss that she had been to the apartment in question, and provided him with an address. As the plan to rob the apartment took shape, Daniels offered to participate "for fun." (App. at 34a.) He also agreed to carry Doss's handgun.

At approximately 2:00 A.M. on the morning of July 1, 1999, Levey drove Doss and Daniels to "the Lofts" apartment complex, where the two men proceeded to the apartment indicated by Eksteen. Three Pennsylvania State University students, Jacob J.

---

[1] Daniels conceded on direct appeal that the quantity of marijuana was said to be ten pounds. (App. at 162a n.5.)

Schmader, Patricia A. Bricker, and Amanda R. Pfaff, were living in the apartment at the time and were awakened by the sound of Doss and Daniels pounding on their front door. When there was no answer, Doss and Daniels left.

Doss and Daniels soon returned, however, this time in a car driven by Brooks. Shortly after 4:00 A.M., Schmader, Bricker, and Pfaff were again awakened by pounding on their door. This time, Doss and Daniels kicked in the door and forcibly entered the apartment.

After issuing a series of threats at gunpoint and ordering the students to be quiet, Doss and Daniels demanded that the students show them the upstairs loft portion of the apartment and tell them where the safe and "weed" were located. Schmader and Bricker offered their wallets to the intruders, but Daniels and Doss persisted in their demands for the safe and "weed," repeatedly threatening the students with bodily injury or death. Daniels, who held the gun, began to focus his attention on Schmader, pointing the gun in Schmader's face and "pistol whipping" him on the top of his head.

Schmader tried to tell Doss and Daniels that the apartment did not contain a safe or "weed," and Bricker and Pfaff offered to give them their computer, television, and VCR. Unappeased, Daniels placed the muzzle of the gun in Schmader's mouth and warned, "If you think this is a joke, I'll kill you, I'll blow your head off." Daniels then struck Schmader in the face with the gun, breaking his nose.

Schmader told Doss and Daniels that he and his house mates were not drug dealers, but that the neighbors were. Upon hearing this, Daniels told Doss to "check it."

4

The students then heard Doss and Daniels rummaging through drawers and under the bed in the loft. When they were finished, Daniels told the students to put their heads down and not to move or they would be shot, emphasizing his instruction by "clicking" the hammer of the gun. Doss and Daniels left the apartment.

After they left, the students called 9-1-1. They found a red Polo shirt on the floor of the kitchen and a bra hanging from a railway beneath the apartment's balcony, neither of which belonged to any of the occupants of the apartment. Bricker discovered that some jewelry was missing from the dresser in the loft. Police responding to the 9-1-1 call found a black duffel bag outside the apartment containing a letter from one Tanna Hockenberry to Brooks. They later learned that the Polo shirt and bra belonged to Brooks. The connection to Brooks presumably led police to identify Doss and Daniels.

On February 9, 2000, a federal grand jury sitting in Harrisburg returned a five-count superseding indictment charging Daniels with brandishing a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count I); conspiracy to brandish a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(o) (Count II); possession of a firearm by an unlawful drug user, in violation of 18 U.S.C. § 922(g)(3) (Count III); committing a violent crime in aid of racketeering activity, in violation of 18 U.S.C. § 1959(a)(3) (Count IV); and witness tampering, in violation of 18 U.S.C. § 1512(b)(1) (Count V). Daniels entered a plea of not guilty, and the case proceeded to trial. On May 3, 2000, after a three-day trial, a jury found Daniels guilty on all counts.

5

At the July 27, 2000 sentencing hearing, the District Court sentenced Daniels to a term of 84 months on Count I, and concurrent terms of 87 months on each of Counts II, III, IV, and V. The District Court ordered that the sentence for Count I run consecutive to the terms for Counts II, III, IV, and V, for a total term of imprisonment of 171 months, followed by five years of supervised release. We affirmed the judgment of conviction in a non-precedential, per curiam opinion and judgment dated September 26, 2002. *See United States v. Daniels*, 48 F. App'x 409 (3d Cir. 2002) ("*Daniels I*").

On November 29, 2003, Daniels timely filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 and an amended motion on July 26, 2004. The District Court denied Daniels's motion in an opinion and order dated January 27, 2005. Daniels filed a motion for reconsideration, which the District Court also denied. On February 22, 2005, he timely filed an application for a certificate of appealability ("COA"). On September 12, 2005, we granted a COA as to three issues:

> (1) whether trial counsel was ineffective for failing to make a specific motion for acquittal on the 18 U.S.C. § 1959(a) count; and (2) whether trial counsel was ineffective for failing to object to jury instructions on the § 1959(a) count; and (3) whether appellate counsel was ineffective for failing to effectively raise the issue of the sufficiency of the evidence on the § 1959(a) count and for failing to raise the jury instruction issue.

(App. at 17a.)

## II. Jurisdiction and Standard of Review

We exercise jurisdiction over Daniels's appeal from the District Court's denial of his § 2255 motion pursuant to 28 U.S.C. §§ 2253 and 1291.

6

The government argues that *Daniels I* constitutes the law of the case and precludes a collateral challenge to the sufficiency of the evidence as to Count IV—and, by extension, the fault Daniels finds with trial and appellate counsel for failure to challenge the sufficiency of the evidence. We give plenary consideration to determining, in the first instance, whether the law-of-the-case doctrine governs resolution of an appeal. *See, e.g.*, *In re City of Phila. Litig.*, 158 F.3d 711, 718 (3d Cir. 1998).

### III. Discussion

**A.** *Daniels I* **and the Law of the Case Doctrine**

The law of the case doctrine generally forbids one panel of an appellate court from reconsidering questions that another panel decided on a prior appeal in the same case. *In re City of Phila.*, 158 F.3d at 717. This doctrine is prudential and does not apply to dicta or issues not actually decided, either expressly or by implication, in a prior appeal. *Id.* at 718. Where an issue was actually decided in a prior appeal, however, we may reconsider that issue only in extraordinary circumstances, such as where "(1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." *Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir. 1997). Thus, two considerations guide the exercise of our discretion as to whether the law of the case doctrine should be applied: (1) whether the prior determination was dictum or the issue in question was not actually decided; and, if not, (2) whether the instant appeal presents one of the recognized "extraordinary circumstances" that would warrant our reconsideration

7

of the previously-decided issue. *In re City of Phila.*, 158 F.3d at 718.

This appeal concerns Daniels's conviction on Count IV for committing a violent crime in aid of racketeering in violation of 18 U.S.C. § 1959, dubbed the "VICAR" statute. Section 1959(a), in relevant part, makes it unlawful for a person to commit a violent crime "for the purpose of gaining entrance to or maintaining or increasing [his or her] position in an enterprise engaged in racketeering activity." Subsection (a)(3), the provision under which Daniels was convicted, establishes a statutory maximum of 20 years imprisonment where the violent crime in question was assault with a dangerous weapon or assault resulting in serious bodily injury. 18 U.S.C. § 1959(a)(3). Therefore, in addition to proving the existence of a racketeering enterprise, the government was required to prove that Daniels committed an assault with a dangerous weapon or an assault resulting in serious bodily injury, and that he did so for the purpose of gaining entrance to or maintaining or increasing his position in Doss's racketeering enterprise.[2] 18 U.S.C. § 1959(a). The motive element does not require proof that the defendant acted solely or primarily out of a desire for self-promotion. *United States v. Concepcion*, 983

___

[2] "Enterprise," as used in § 1959(a), broadly includes "any union or group of individuals associated in fact although not a legal entity, which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1959(b)(2). "Racketeering activity" includes "any act or threat involving . . . dealing in a controlled substance . . ., which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1)(A); *see also* 18 U.S.C. § 1959(b)(1). Pennsylvania law specifies a minimum term of two years' imprisonment for possession with intent to distribute as little as one gram of heroin. 18 Pa. Cons. Stat. Ann. § 7580(a)(7)(1). (*See* App. at 22a-23a (testifying that Doss supplied heroin to Levey and Brooks for sale).)

F.2d 369, 381 (2d Cir. 1992). It is satisfied "if the jury could properly infer that the defendant committed his violent crime because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership." *Id.*; *see also United States v. Carson*, 455 F.3d 336, 369 (D.C. Cir. 2006).

On his direct appeal, both in his counsel's brief and in his *pro se* brief, Daniels argued that the government's evidence was insufficient to prove that he committed an assault for the purpose of enhancing his position in an enterprise engaged in racketeering activity. Counsel argued that with regard to Count IV, "the Government has totally failed to show that [Daniels] engaged in any type of enterprise to enhance his status within a gang, an association or a conspiracy." (App. at 152a.) In his *pro se* supplemental brief, Daniels elaborated on this argument. He contended that the evidence clearly showed that he met Doss for the first time on the evening of June 30, 1999, that "while in an intoxicated state," he (Daniels) agreed to commit a robbery merely "for fun," and that the government failed to prove that he sought to be involved in Doss's drug trafficking activities. (*Id.* at 161a-162a.) While effectively conceding that he knew that one object of the robbery was to obtain a large quantity of marijuana, he suggested that he "could have very well believed that the alleged marijuana . . . would be utilized to supply the party or even another party like the one he attended." (*Id.* at 162a.)

We rejected these arguments in *Daniels I*. First, we found that the government's evidence was sufficient to permit a reasonable jury to find the existence of a racketeering enterprise. *Daniels*, 48 F. App'x at 416-17. Second, and more significantly for purposes

9

of this appeal, we found that the government's evidence was sufficient to prove that Daniels acted to "'maintain or increase'" his position within the racketeering enterprise. *Id.* at 417 (quoting *United States v. Tse*, 135 F.3d 200, 206 (1st Cir. 1998), and *Concepcion*, 983 F.2d at 381).

> The evidence showed that Doss told [Daniels] that the reason he wanted to commit the robbery was to shore up Doss's drug distribution business, that [Daniels] agreed to assist Doss with full knowledge of Doss's goals, and that [Daniels] assaulted Schmader to facilitate the commission of the robbery. A rational trier of fact could find based on such evidence that [Daniels] committed the assault for the purpose of furthering Doss's ends.

*Id.* We therefore considered and rejected Daniels's challenge to the sufficiency of the evidence against him as to Count IV. *Id.*

Daniels does not attack *Daniels I* as dictum or contend that we did not actually decide the issue of the sufficiency of the evidence as to Count IV. Rather, he urges us to find that two exceptional circumstances preclude us from applying the law of the case doctrine. First, he argues that *Daniels I* was simply wrong because there was no evidence in the record that he knew of Doss's drug trafficking activities at the time of the robbery. Second, he points to newly available evidence in the form of an affidavit from Doss in which Doss attests that he never discussed with Daniels the reason he wanted to commit a robbery.

**B.      The Holding of *Daniels I* Is Not Clearly and Manifestly Unjust**

The law of the case doctrine "is not a 'barrier to correction of judicial error.'" *Schultz v. Onan Corp.*, 737 F.2d 339, 345 (3d Cir. 1984) (quoting *Loumar, Inc. v. Smith*,

10

698 F.2d 759, 762 (5th Cir. 1983)).  The threshold for finding clear error and manifest injustice, however, is high.  *See Laffey v. Northwest Airlines, Inc.*, 740 F.2d 1071, 1082-83 (D.C. Cir. 1984).  We may disregard the law of the case only when we have "'a clear conviction of error' with respect to a point of law on which [our] previous decision was predicated."  *Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir. 1981) (quoting *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964)).  "'[M]ere doubt on our part is not enough to open the point for full reconsideration.'"  *Id.* (quoting *White v. Higgins*, 116 F.2d 312, 317 (1st Cir. 1940)).

We need not decide whether we erred when we concluded that there was sufficient evidence in the record that Daniels knew of Doss's drug trafficking activities on the night and in the early morning of June 30 – July 1, 1999 and that Daniels knew Doss's reason for wanting to commit the robbery because even if we erred, there is no manifest injustice given the concurrent sentence imposed on Count IV.[3]  More specifically, because Daniels received an 87-month sentence on each of Counts II, III, IV, and V, the sentences to be served concurrently, a decision not to reverse Count IV, even if reversal was otherwise warranted, would have virtually no effect.

## C.    Ineffective Assistance of Counsel

We must next consider whether the District Court erred in finding that Daniels

---

[3]  For the same reason, we need not consider whether the Doss affidavit constitutes new evidence that would compel our reversing the conviction on Count IV because even if it does, Doss's concurrent sentences on Counts II, III, and V ensure that, aside from the $100 special assessment imposed on Count IV, the outcome would remain the same.

failed to satisfy either prong of the *Strickland* standard. (*See* App. at 9a.) Our review is plenary. *Duncan*, 256 F.3d at 200. We need not reach the issue of counsel's performance where the defendant has failed to establish prejudice. *See Rolan v. Vaughn*, 445 F.3d 671, 678 (3d Cir. 2006); *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

To satisfy the prejudice prong of *Strickland*, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see also Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996) (paraphrasing same). "A reasonable probability is one 'sufficient to undermine confidence in the outcome.'" *United States v. Gray*, 878 F.2d 702, 710 (3d Cir. 1989) (quoting *Strickland*, 466 U.S. at 694). "This standard 'is not a stringent one;' it is less demanding than the preponderance standard." *Jermyn v. Horn*, 266 F.3d 257, 282 (3d Cir. 2001) (quoting *Baker v. Barbo*, 177 F.3d 149, 154 (3d Cir. 1999)). A reviewing court must consider the totality of the evidence at trial; "'a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.'" *Rolan*, 445 F.3d at 682 (quoting *Gray*, 878 F.2d at 711).

For the same reason that there is no "manifest injustice," there is no prejudice under the *Strickland* test.

## IV. Conclusion

We will affirm the order of the District Court.

12