

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-24-1996

# Dickerson v. Vaughn

Precedential or Non-Precedential:

Docket 95-1525

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Dickerson v. Vaughn" (1996). *1996 Decisions.* Paper 113.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/113

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 95-1525
_____

ANTHONY DICKERSON,

Appellant

v.

DONALD T. VAUGHN; THE ATTORNEY GENERAL OF THE STATE OF
PENNSYLVANIA; THE DISTRICT ATTORNEY OF BUCKS COUNTY,
PENNSYLVANIA,

Appellees.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 95-cv-01135)
_____

Submitted Pursuant To Third Circuit LAR 34.1(a)
April 29, 1996
Before:  STAPLETON, SCIRICA, and WEIS, Circuit Judges

***    ***    ***    ***
_____

No. 95-1353
_____

LARRY MEGGETT,

Appellant

v.

MARTIN DRAGOVICH, SUPERINTENDENT OF MAHANOY; THE
ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA; THE
DISTRICT ATTORNEY OF BUCKS COUNTY,

Appellees

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 95-cv-00819)
_____

Argued April 30, 1996

Before:  STAPLETON, SCIRICA, and WEIS, Circuit Judges.

Filed July 24, 1996
_____

Jane Goldberg, Esquire
555 City Line Avenue, Suite 510
Bala Cynwyd, Pennsylvania  19004

Attorney for Appellant Anthony Dickerson in No. 95-1525


Alan M. Rubenstein, Esquire
 District Attorney
Stephen B. Harris, Esquire
 Chief of Appeals
Carolyn K. Oliver, Esquire
 Deputy District Attorney
District Attorney Office
Bucks County Courthouse
Fourth Floor
Doylestown, PA  18901

Attorneys for Appellees in No. 95-1525


Robert E. Nicholson, Esquire (ARGUED)
55 Washington Street, Suite 203
East Orange, New Jersey  07017

Attorney for Appellant Larry Meggett in No. 95-1353


Alan M. Rubenstein, Esquire
 District Attorney
Stephen B. Harris, Esquire (ARGUED)
 Chief of Appeals
Carolyn K. Oliver, Esquire
 Deputy District Attorney

Attorneys for Appellees in No. 95-1353


_____

OPINION OF THE COURT
_____




WEIS, Circuit Judge.
        In these habeas corpus cases, petitioners allege that
they would not have pleaded nolo contendere if they had known
that their pleas would prevent them from appealing a pre-trial

ruling.  The state's intermediate appellate court found that the pleas were induced by faulty legal advice by trial counsel and that petitioners were entitled to new trials.  The state Supreme Court reversed, holding that the petitioners' responses during a plea colloquy in the state trial court barred them from challenging the voluntariness of their pleas.  Because established federal law prohibits giving such preclusive effect to plea colloquies, we conclude that habeas corpus relief is appropriate.

## I.  Factual Background

Petitioners Larry Meggett and Anthony Dickerson were charged in the Court of Common Pleas of Bucks County, Pennsylvania, with counts of participating in a corrupt organization, manufacture, delivery and possession of controlled substances, conspiracy and related offenses.  On the day set for trial, the presiding judge denied the petitioners' motions raising double jeopardy.

While petitioners were handcuffed together in the courtroom awaiting selection of a jury, they heard their co-defendants plead guilty and agree to turn state's evidence.  The prosecutor then offered petitioners a concession limiting the terms of incarceration imposed if they pleaded guilty.  Petitioners asserted that they then decided to plead nolo contendere after assurances from their respective lawyers that the double jeopardy issue could be preserved for appeal.

During the plea colloquy, the trial judge told each defendant that "as far as sentencing is concerned [entering a nolo contendere plea] is the same as pleading guilty."  The judge then asked:  "Do you understand your only appeal rights are whether this [crime] happened in Bucks County; whether [the] sentence is lawful and whether you're entering this plea of your own free will?"  Petitioners replied that they so understood.

Petitioners did not take a direct appeal, but two months after sentencing they filed petitions under the Pennsylvania Post Conviction Relief Act.  The Common Pleas Court conducted a consolidated evidentiary hearing at which both petitioners and their attorneys testified.  The court denied relief, finding the trial counsels' testimony to be credible and rejecting the portions of the petitioners' testimony that were contradictory.

At the hearing, Meggett testified that he, Dickerson and their respective lawyers were all present when they discussed the possibility of entering nolo contendere pleas.  Meggett asked his counsel whether he would be giving up his right to contest the double jeopardy matter if he pleaded nolo contendere.  His lawyer responded, "No, we would still be preserving our rights."  Meggett testified that both lawyers replied that "if we took the nolo contendere we could still have the issues preserved."

During his testimony, Meggett's trial counsel was asked what he had told his client about the validity of the double jeopardy claim.  He answered, "I thought it was a good argument.  I couldn't guarantee it was a winner and that he could attempt to argue it after he pled guilty.  And that if he wished to do that, he should get new counsel, because I certainly wouldn't be in a

position to do it.  And I told him that I couldn't guarantee we would win either, if he did plea or if we didn't plea."  The lawyer was then asked:  "Did you believe at that time that he could continue his double jeopardy argument even after entering a nolo contendere plea?"  He responded:  "I believe that if counsel is creative, he probably could get away with that," but that he had not looked into how it could be done because it was "not my job."

Petitioner Dickerson testified that his lawyer said nolo contendere was not like a guilty plea because "you still have all your appealable issues" and that a nolo plea was not a waiver.  According to Dickerson, the attorney urged him to take the plea bargain offered by the prosecutor, telling him:  "You could still push the double jeopardy and still be heard."  Dickerson said he would not have pleaded if he had known it meant waiving his double jeopardy appeal.

At the hearing, Dickerson's trial attorney was asked whether he had told his client that he could raise the double jeopardy issue on appeal.  He conceded, "I probably said it was possible, although I did tell him he was limited in his rights of appeal."  The lawyer also testified that about six weeks before the hearing, he had written a letter to Dickerson in which he said, "I believe that because pre-trial motions were denied without a hearing and without your presence, that you may yet have a double jeopardy issue brought before the Court."

Petitioners appealed the denial of their post conviction petitions to the Superior Court of Pennsylvania.  That Court, reiterating settled Pennsylvania law, stated that with respect to the termination of appellate rights, a nolo contendere plea had the same effect as a guilty plea.  The Court nevertheless reversed in separate opinions.

In the Meggett case, the Superior Court stated that the issue was whether a client's "claim of a right to be properly advised by counsel regarding the merits of the double jeopardy claim is warranted, as this is what influenced [the petitioners'] decision to plead."  The opinion commented:  "There can be no legitimate basis for failing to apprise a defendant of the continuing validity of his claims."  The Court was critical of "a somewhat lackadaisical attitude" on the part of Meggett's lawyer. Finally, the opinion pointed out that "the propriety of the sentencing colloquy will not, in and of itself, resolve the question as to whether "[petitioner] made his plea voluntarily and knowingly . . . While the colloquy was not defective, it cannot be expected to anticipate and resolve issues in the mind of the defendant of which only the attorney is aware."

In the Dickerson opinion, the Superior Court found that he "was prejudiced by relying to his detriment on this erroneous advice" and that the "plea colloquy did not cure such prejudice." After reviewing the hearing testimony and evidence, the Court stated that "there can be no doubt as to the arguable merit of Dickerson's claim."  The opinion concluded that "but for" the attorneys' "faulty advice" on the continued vitality of the double jeopardy claims, petitioners "would not have entered a plea."  The Court vacated the sentences and remanded for

withdrawal of the pleas and new trials in both cases.

The Supreme Court of Pennsylvania granted allocatur and, without briefing or argument, reversed the Superior Court's orders and reinstated the convictions. Rejecting the conclusion that the pleas were defective, the state Supreme Court's succinct orders asserted that each petitioner "clearly stated in his guilty plea colloquy that he understood that his guilty plea would limit his appellate rights to challenges based on the jurisdiction of the court, the lawfulness of his sentence, and the voluntariness of his plea. It is well established that a defendant cannot challenge his guilty plea by asserting that he lied while under oath." The orders contain neither references to ineffective assistance of counsel, nor factual determinations of what advice was given to petitioners or whether they relied on it in entering their pleas.

Petitioners then sought relief in the district court, but these separate requests were denied. We consolidated both cases for disposition.

## II. Standard of Review

While the petitioners' appeals were pending in this Court, Congress enacted amendments to 28 U.S.C. 2254 changing the standard of review for cases challenging state convictions where constitutional violations are alleged to have occurred. These provisions state that federal courts may not grant relief "unless the [state court] adjudication of the claim -- (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . . or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Antiterrorism and Effective Death Penalty Act of 1996, sec 104(3),Pub. L. No. 104-132, 110 Stat. 1214, 1219 (1996).

Under the earlier version of 28 U.S.C. 2254(d), we presumed that a state court's factual finding was correct unless, inter alia, "such factual determination is not fairly supported by the record." In contrast, state court legal rulings were accorded no deference under the former statute. Parry v. Rosemeyer, 64 F.3d 110, 113 (3d Cir. 1995).

We have concluded that the resolution of the issues in this case would not differ under either version of the statute. Accordingly, we will apply the current, more deferential test.

## III. The State Courts' Findings

The circumstances here are somewhat unusual because we are confronted with factual findings of the state appellate court that diverge from those in the trial court. For example, the Common Pleas court wrote: "The record adduced at the pleas and at hearing on May 21, 1993 [the Post Conviction Relief Act proceeding], does not support a conclusion that defendants' pleas were induced by faulty advice from their trial counsel." The Superior Court found to the contrary based on the same record. Although there clearly was a conflict between the versions of what had occurred, the Superior Court found the critical facts in favor of petitioners.

Federal courts in habeas corpus cases are required to

give deference to the factual findings of both the state trial and appellate courts. Parke v. Raley 506 U.S. 20, 36 (1993); Sumner v. Mata, 449 U.S. 539, 546 (1981) (section 2254 makes no distinction between the factual determinations of a state trial court and those of a state appellate court). When there are conflicting fact findings by state courts, we believe that according proper deference requires us to accept the version reached by the higher court. To rule otherwise would be to insert our Court into the state appellate system and take onto ourselves the role entrusted to the state Superior Court. We find no justification for such an intrusion here.

Had the state Supreme Court made factual findings in reversing the Superior Court, we would be required to accept them as those of the highest court in the state. As noted earlier, however, the Pennsylvania Supreme Court made no factual findings on the critical issues of whether petitioners relied on their counsels' faulty advice, or whether they would not have pleaded nolo contendere but for that incorrect statement of the law. Instead, the Court limited its comments to the effect of the petitioners' statements made during the plea colloquy.

It is significant for our purposes that the state Supreme Court did not set aside the Superior Court's factual conclusions about the inducement for the pleas and the causation element. Thus, it appears that the state Supreme Court's ruling on the law is a narrow one -- having stated that they understood the limitations of their appellate rights, petitioners could not take a different position in the Post Conviction Relief Act proceedings. The Court's holding thus was a legal, rather than a factual, matter and one that does not directly or impliedly take issue with the relevant facts found by the Superior Court.

And so, although we must defer to the Superior Court's factual determinations left undisturbed by the state Supreme Court, we review the legal ruling of the state Supreme Court to see whether it was "contrary to, or involved an unreasonable application of, clearly established federal law." 28 U.S.C. 2254. Accordingly, we must explore the relevant federal law.

In Blackledge v. Allison, 431 U.S. 63 (1977), a defendant in a state case was required to complete a printed form used by the trial court in connection with guilty pleas. One of the questions asked whether the defendant understood he could be imprisoned for a minimum of ten years to life. The defendant wrote "Yes" in response. The other pertinent inquiry was whether "the Solicitor, or your lawyer, or any policeman, law officer or anyone else made any promises or threat to you to influence you to plead guilty." Id. at 66. The defendant answered "No."

After being sentenced to seventeen to twenty-one years in prison, the defendant filed a petition in federal court alleging that before he entered his plea, his attorney had led him to believe that as a result of an agreement with the Solicitor and the judge the sentence would be no more than ten years. The defendant also asserted that he had been instructed to answer the questions on the court's form as he had done.

The Supreme Court held that Allison's habeas corpus petition should not have been dismissed simply because of his

answers to the questions at the plea proceeding. The Court commented that "the barrier of the plea or sentencing proceeding record, although imposing, is not invariably insurmountable." Id. at 74. Consequently, "the federal courts cannot fairly adopt a per se ruling excluding all possibility that a defendant's representations at the time his guilty plea was accepted were so much the product of such factors as misunderstanding, duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment." Id. at 75.

The Allison opinion cited Fontaine v. United States, 411 U.S. 213 (1973), which held that in a collateral proceeding a prisoner may not ordinarily repudiate statements made to the sentencing judge. However, the Court observed that no procedural device for taking guilty pleas is so perfect as to justify a per se rule making it "uniformly invulnerable to subsequent challenge." Id. at 215. Mabry v. Johnson, 467 U.S. 504, 509 (1984), stated in like vein, "a guilty plea entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentations (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g., bribes)."

In Zilich v. Reid, 36 F.3d 317 (3d Cir. 1994), a state prisoner sought relief from his sentence of incarceration because his attorney had promised probation if a guilty plea were entered. In directing an evidentiary hearing, we cited cases holding that guilty pleas are not voluntary where they are induced by misleading statements of defense counsel. Id. at 320–21. (citing Lesko v. Lehman, 925 F.2d 1527, 1537 (3d Cir. 1991); United States v. Marzgliano, 588 F.2d 395, 399 (3d Cir. 1978); United States v. Valenciano, 495 F.2d 585, 587 (3d Cir. 1974)).

This brief review provides the background against which we review the state Supreme Court's holding in its memorandum opinion.

The issue before us may properly be described as a claim of ineffective assistance of counsel, which had the effect of producing an involuntary plea. Although the claim has two phases, the question is actually a unitary one. The misrepresentation of the applicable law about the appealability of the double jeopardy issue vitiates voluntariness unless it can be shown that the trial court addressed that point so clearly in the colloquy that it cancelled out counsel's advice and left petitioners with no doubt on the correct legal principle.

As noted earlier, however, the trial court did not mention the double jeopardy issue. As the Superior Court observed, there was nothing to put the trial court on notice that petitioners believed a nolo plea preserved the right to appeal on double jeopardy. The lack of any discussion on that point by the trial judge could reasonably have led petitioners to believe their attorneys' advice had been valid.

It is worth noting that the trial judge, in referring to the nolo contendere plea, told petitioners: "Now as far as

sentencing is concerned, [a nolo contendere plea] is the same as pleading guilty." (emphasis added). Arguably, the comments limiting the scope of the nolo plea, together with the trial judge's later reference to appeal rights being restricted to whether "the sentence was lawful," were not so clear as to lead a reasonable person to believe the double jeopardy issue did not survive.

To the extent that the state Supreme Court appears to have adopted a per se rule that a defendant's facially incorrect responses during a plea colloquy bar claims for involuntariness, the holding is contrary to clearly established federal law as articulated in Allison and the other opinions we have cited. It follows that the reversal of the Superior Court's order resulted in a denial of the petitioners' constitutional rights.

The Superior Court's factual findings and conclusions were consistent with federal constitutional requirements. In Hill v. Lockhart, 474 U.S. 52, 59 (1985), in discussing the effect of ineffective assistance of counsel on a guilty plea, the Supreme Court stated "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." See also United States v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994).

Based on the Superior Court's findings, petitioners here have met that burden and we are persuaded that they are entitled to relief in the federal courts.

## IV.  Scope of Relief

That conclusion brings us to a consideration of appropriate form of relief. In Barry v. Brower, 864 F.2d 294, 301 (3d Cir. 1988), we held that because federal courts should not interfere with a state's conduct of its litigation, a district court should not directly order a state to grant a defendant an appeal. Moreover, a state should be given the opportunity to correct its own errors and federal remedies should be designed to enable state courts to fulfill their constitutional obligations to the defendant. Heiser v. Ryan, 15 F.3d 299, 306 (3d Cir. 1994). In Barry, we concluded that it was permissible for the federal court to direct the petitioner's release unless within thirty days the state granted him the right to appeal. 864 F.2d at 301. See also Herrera v. Collins, 506 U.S. 390, 403 (1993).

In the case before us, one option would be for the state to permit petitioners to withdraw their guilty pleas and go to trial. It occurs to us, however, that there may be another form of relief more closely tailored to the petitioner's avowed deprivation -- the right to appellate review of the double jeopardy issue.

In a number of cases, Pennsylvania appellate courts have upheld the power of the Common Pleas courts to grant the right of appeal nunc pro tunc. In Commonwealth v. West, 482 A.2d 1339, 1343 (Pa. Super. Ct. 1984), the Pennsylvania Superior Court observed that when counsel has been found ineffective for failure to file an appeal, permission for nunc pro tunc appeals had been allowed. See Bond v. Fulcomer, 864 F.2d 306, 312 (3d Cir. 1989).

In West, the Court granted leave to file a petition for allocatur to the state Supreme Court nunc pro tunc when the defendant's counsel had failed to do so. Similar relief was allowed in Commonwealth v. Wright, 394 A.2d 582 (Pa. Super. Ct. 1978), Commonwealth v. Gibbs, 563 A.2d 1244 (Pa. Super. Ct. 1989), and Larkin v. Commonwealth, 555 A.2d 954 (Pa. Commw. Ct. 1989).

In Commonwealth v. Terreforte, 564 A.2d 479 (Pa. Super. Ct. 1989), the Superior Court was faced with a situation analogous to the case presently before us. Although the defendant pleaded guilty, he expressly reserved the right, based on his counsel's advice, to appeal a speedy trial issue. After a post conviction relief hearing, the trial court granted the right to appeal the speedy trial issue nunc pro tunc. The Superior Court refused to recognize the conditional plea and did not address the speedy trial issue. Instead, the Superior Court allowed the defendant to withdraw his plea because it had been based on incorrect advice from his counsel and the trial court.

In a brief order, the Pennsylvania Supreme Court reversed and remanded with directions to review the speedy trial claim. Commonwealth v. Terreforte, 587 A.2d 309 (Pa. 1991). Thus, the Court allowed appellate review of the precise issue that the defendant had reserved in entering his guilty plea. In effect, the state Supreme Court enforced the provisions of the "conditional plea," although it did not discuss that procedure as such.

A similar disposition of the present case would be sufficient to remedy the constitutional violation. The double jeopardy claim is a discrete, and perhaps dispositive, issue that could be resolved in this fashion. See e.g., United States v. Bentz, 21 F.3d 37 (3d Cir. 1994) (a defendant may preserve a precise issue for appellate review and enter a conditional plea); United States v. Zudick, 523 F.2d 848 (3d Cir. 1975) (approving the use of conditional pleas of guilty); see also Fed. R. Crim. P. 11(a)(2).

Accordingly, the orders of the district courts are reversed and the cases are remanded with directions that petitioners be released from custody within 120 days, unless within that time the Commonwealth of Pennsylvania allows petitioners to withdraw their pleas and grants new trials, or in the alternative, petitioners are granted the right to file conditional appeals nunc pro tunc challenging the denial of their motions of acquittal on double jeopardy grounds.