**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 778 CAP |
| | : | |
| Appellee | : | Appeal from the Order entered on |
| | : | March 20, 2019 in the Court of |
| | : | Common Pleas, Philadelphia |
| v. | : | County, Criminal Division at No. CP- |
| | : | 51-CR-1036271-1992. |
| | : | |
| MELVIN SPEIGHT, | : | SUBMITTED:  May 29, 2020 |
| | : | |
| Appellant | : | |

**OPINION**

**JUSTICE DOUGHERTY**                    **DECIDED:  April 29, 2021**

In 2017, the United States District Court for the Eastern District of Pennsylvania denied appellant Melvin Speight's petition for a writ of *habeas corpus* relative to challenges to the guilt phase of his state criminal trial, but granted relief with respect to his death sentence and remanded the case to the Commonwealth of Pennsylvania for resentencing.  In granting this limited penalty-phase relief the District Court's order cited only the agreement of the parties indicating such relief was unopposed.  For that reason, when appellant's case finally returned to the state court for resentencing in 2019, the court declined to resentence him.  The sentencing court took the position that the federal District Court lacked authority to grant relief based exclusively on the agreement of the parties in the absence of an independent judicial determination consistent with 28 U.S.C. §2254(d) (*habeas corpus* relief shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication resulted in a decision that

was contrary to, or an unreasonable application of, federal law, or the decision was based on an unreasonable determination of facts in light of the evidence presented). As a result, the sentencing court issued an order declaring appellant's "sentence of death stands." We now vacate the court's order and remand for resentencing.

The facts supporting appellant's convictions are largely irrelevant to the issues before us. It suffices to say he was convicted in the Philadelphia Court of Common Pleas in 1993 of two counts of first-degree murder and related offenses and sentenced to death. This Court affirmed his judgment of sentence on direct appeal and, later, twice affirmed orders denying him post-conviction relief. *Commonwealth v. Speight*, 677 A.2d 317 (Pa. 1996), *cert. denied*, 519 U.S. 1119 (1997); *Commonwealth v. Speight*, 854 A.2d 450 (Pa. 2004); *Commonwealth v. Speight*, 986 A.2d 759 (Pa. 2009) (*per curiam*).

Appellant also sought relief in the federal courts. In 2005, he petitioned the United States District Court for the Eastern District of Pennsylvania for a writ of *habeas corpus* raising seventeen claims for relief — some of which pointedly attacked the validity of his death sentence. *See Speight v. Beard*, No. CV 04-4110, 2017 WL 914907, at *3 (E.D. Pa. Mar. 7, 2017) (Quiñones Alejandro, J.). For its part, the Commonwealth, represented by the Philadelphia District Attorney's Office, filed an answer on December 22, 2014, in which it contested appellant's claims pertaining to his convictions but raised no procedural or substantive defenses to the claims of sentencing error. Most relevant for our purposes, the Commonwealth conveyed to the court that it was "'not contest[ing] a conditional grant of relief as to [appellant]'s death sentence[,]'" and, further, that it "'will not seek a new capital sentencing proceeding in connection with this case.'" *Id.*, *quoting* Response to Habeas Petition, 12/22/2014, at 10 n.11.[1]

---

[1] Of note, however, the Commonwealth's response went on to explain that its agreement to sentencing relief was made with "the understanding that this will not be understood or argued to constitute a concession that any of [appellant]'s claims have merit." *Id.* Indeed,

The District Court subsequently referred the case to a magistrate judge to issue a report and recommendation on appellant's petition. *See* 28 U.S.C. §636(b)(1)(B) ("a judge may also designate a magistrate judge . . . to submit to a judge of the court proposed findings of fact and recommendations for the disposition . . . of applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement"). "Following an extensive review of [appellant]'s claims and the record," the magistrate judge recommended the "petition for *habeas corpus* relief be denied and dismissed as to the guilt phase of [appellant]'s trial, and . . . [appellant]'s sentence of death be vacated and [appellant] sentenced to life imprisonment, in accordance with [the Commonwealth's] representations and stipulation to the grant of this limited relief." *Speight v. Beard*, No. CV 04-4110, 2016 WL 8459847, at *4 (E.D. Pa. Jan. 29, 2016) (Caracappa, C.M.J.).[2] Appellant filed objections to the magistrate judge's report and the Commonwealth responded.

On March 7, 2017, the District Court issued an order and written opinion approving and adopting the magistrate judge's recommendations to deny appellant guilt-phase relief but grant penalty-phase relief. *See Speight*, 2017 WL 914907, at *1 ("Upon a thorough and independent review of the state record, the relevant court filings, and a *de novo*

---

beyond its general and vague acquiescence to penalty-phase relief, the Commonwealth otherwise "did not address any of [appellant]'s claims that challenged his sentence." *Id*. The parties have curiously omitted any discussion of this aspect of the Commonwealth's position in their briefs before this Court.

[2] Relative to this latter recommendation, the magistrate judge candidly acknowledged her report did "not address [appellant]'s claims two, eleven, twelve, thirteen, fourteen, or fifteen, which deal with [his] sentencing[,]" "because [the Commonwealth had] stated [it] will not contest a grant of relief as to [his] death sentence[.]" *Id*. In other words, it is unclear which (if any) of appellant's various sentencing claims the magistrate judge believed was meritorious, whereas the Commonwealth apparently believed there was no meritorious claim — or at least none that it was willing to admit at that time, even though it agreed that relief was proper.

review of [appellant]'s objections, . . . this Court overrules [appellant]'s objections, approves and adopts the [Report and Recommendation], and denies the petition for a writ of *habeas corpus* as to the guilt phase of [appellant]'s trial. With respect to [appellant]'s sentence of death, upon agreement of the parties (as described herein), [appellant]'s death sentence is vacated, and [appellant] is to be re-sentenced to a term of life imprisonment"). The District Court's accompanying order mirrored the court's written opinion, stating in relevant part:

> With respect to the penalty of death, upon agreement of [appellant] and [the Commonwealth], the petition for a writ of *habeas corpus* is **GRANTED**, and [appellant]'s case is remanded to the Commonwealth of Pennsylvania for re-sentencing.

District Court Order, 3/7/2017, at 1 (emphasis in original). According to appellant, as a consequence of this order the Department of Corrections removed him from death row and transferred him to general population. *See* Appellant's Brief at 14. Meanwhile, he elaborates, he sought a certificate of appealability from the United States Court of Appeals for the Third Circuit with respect to the denial of his guilt phase claims, which was denied on June 15, 2018, at docket number 17-1725.

The case then returned to the Court of Common Pleas of Philadelphia and was assigned to the (now retired) Honorable Kathryn Streeter Lewis. But when the parties jointly requested that the court schedule a resentencing hearing in conformity with the District Court's order, Judge Streeter Lewis instead directed the parties to file memoranda addressing the legal effect of the federal court's grant of relief premised only on the parties' agreement, especially in light of the decisions in *Commonwealth v. Brown*, 196 A.3d 130 (Pa. 2018), and *Sibron v. New York*, 392 U.S. 40 (1968).[3] On March 8, 2019,

---

[3] As it relates to the present case, these decisions generally stand for the proposition that "a district attorney's concession of error is not a substitute for independent judicial review." *Brown*, 196 A.3d at 146; *see Sibron*, 392 U.S. at 58 ("Confessions of error are, of course,

appellant complied and filed a memorandum in which he asserted neither *Brown* nor *Sibron* "alter the conclusion that the federal court Order binds this Court." Appellant's Memorandum, 3/8/2019, at 4. Moreover, he argued those cases are distinguishable in that they both involved situations in which courts were deciding whether to accept a prosecutor's confession of error; they did not address the present circumstances in which a federal court **already** exercised its judgment and granted *habeas* relief. *See id.* The Commonwealth fully agreed with this assessment. *See* Commonwealth's Memorandum, 3/8/2019, at 1.

But Judge Streeter Lewis was not persuaded. On March 20, 2019, she issued an order declaring the court "has no authority to vacate [appellant]'s sentence . . . pending an independent judicial determination by the [f]ederal court of [appellant]'s *habeas corpus* death penalty claim as required pursuant to 28 U.S.C.A. §2254(d)(1)(2)." Trial Court Order, 3/20/2019, at 1-2. In support of this order, Judge Streeter Lewis reasoned: "An agreement between the parties, absent a judicial determination of a violation of clearly established [f]ederal law as determined by the United States Supreme Court or an unreasonable determination of facts in light of the evidence presented in the [s]tate court proceeding, is not sufficient to warrant the grant of *habeas corpus* relief, direct that the original sentence imposed be vacated, and order resentencing." *Id.* at 2, *citing, e.g.*, *Sibron*, *supra*; *Young*, *supra*; *Brown*, *supra*. Judge Streeter Lewis ultimately concluded that, "pending a determination on the merits of [appellant]'s death penalty claim, pursuant to [Section 2254(d)] by the District Court for the Eastern District of Pennsylvania, **[appellant]'s sentence of death stands**." *Id.* (emphasis added).

---

entitled to and given great weight, but they do not 'relieve this Court of the performance of the judicial function.'"), *quoting Young v. United States*, 315 U.S. 257, 258 (1942).

Appellant filed an unopposed motion for reconsideration on April 4, 2019, in which he contended the court's March 20th order "is a nullity because it purports to hold [him] under a sentence of death that was invalidated as a matter of law two years ago." Motion to Reconsider, 4/4/2019, at 2; *see also id.* at 5 (arguing the "federal court order here thus invalidated [his] death sentence, and the Commonwealth could re-impose a death sentence only through a capital resentencing proceeding"). However, less than two weeks later the Honorable Lillian H. Ransom was appointed to take over the case, as Judge Streeter Lewis was no longer sitting in the jurisdiction due to her retirement from the bench. *See* Appointment Order, 4/17/2019, at 1. Five days after that, on April 22, 2019, appellant filed the present appeal, thereby divesting the common pleas court of jurisdiction to rule upon his motion for reconsideration of Judge Streeter Lewis's order, which was entered more than 30 days prior to that point. S*ee* Pa.R.A.P. 1701(a) (except as otherwise prescribed, after an appeal is taken, the trial court may no longer proceed further in the matter); 42 Pa.C.S. §5505 ("Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any other within 30 days after its entry . . . if no appeal from such order has been taken or allowed.").

Significantly, approximately two months after Judge Streeter Lewis retired and the common pleas court had lost jurisdiction by virtue of appellant's notice of appeal, the federal District Court clarified its prior order granting appellant *habeas* relief. This clarification appeared in a June 18, 2019 order, in response to a June 13, 2019 motion filed by appellant and consented to by the Commonwealth, which "asked the District Court to clarify that its judgment had vacated [appellant]'s death sentence **as a matter of law**[.]" Appellant's Brief at 15 (emphasis added).[4] In its June 18th order, the District Court not

---

[4] Apparently, the court of common pleas' March 20th order announcing that appellant's "sentence of death stands" prompted the Department of Corrections, on June 6, 2019, to

only instructed the Department of Corrections to return appellant to the general prison population and reiterated that his "execution shall remain stayed[,]" but it also explained as follows:

> In the underlying motion, [appellant] advises this Court that a state court judge refused to resentence him and deemed this Court's Order and Judgment "not sufficient to warrant the grant of *habeas* relief" and, therefore, [appellant] moves for a clarifying order. [Appellant] has also appealed the state court judge's refusal to resentence him to the Pennsylvania [Supreme] Court. In light of this procedural posture, [appellant]'s consent motion is denied without prejudice to its refiling, if appropriate, following the conclusion of [appellant]'s current state court appellate proceedings. Further, the Court's Memorandum Opinion and Order of March [7, 2017], are unambiguous and need no clarification. A reasonable reading of this Court's March 7, 2017 Memorandum Opinion and Order shows that **[appellant]'s sentence of death was invalidated as a matter of federal law**. Nevertheless, this Court's determination and judgment that [appellant] is no longer death-penalty eligible is a determination that must be upheld and enforced by the state prison authority unless and until advised otherwise. This Court will allow for the state court appellate process to address [appellant]'s issues with the state Common Pleas Court judge's opinion.

District Court Order, 6/18/2019, at 1 n.1 (emphasis added).

A few months later, Judge Ransom authored a Pa.R.A.P 1925(a) opinion with respect to this appeal. She opined at the outset that "this case provides an opportunity to consider a novel question of law: does the Supremacy Clause obligate a state court to abide by an order of the District Court where the District Court has failed to follow the requirements of 28 U.S.C.A. §2254(d)(1)(2)?" Trial Court Op., 9/16/2019, at 2. She then proceeded to answer that question in the negative, adopting Judge Streeter Lewis's position that the court of common pleas was "not compelled to resentence [appellant] without an independent judicial determination made by the United States District Court for the Eastern District of Pennsylvania." *Id.* at 2-3; *see also id.* at 3-4 ("Absent a judicial

---

remove appellant from the general prison population and place him back on death row, which in turn prompted appellant's federal motion. *See* Appellant's Brief at 15.

determination of a violation of clearly established law as determined by the United States Supreme Court or an unreasonable determination of facts in light of the evidence presented in the state court proceeding, an agreement between the parties is not sufficient to warrant the grant of *habeas corpus* relief[.]").  In Judge Ransom's view, like that of Judge Streeter Lewis, it appeared the District Court "did not make an independent decision" because the court's March 7th order "only references . . . review of the Report and Recommendation submitted by [the magistrate judge], in which [the magistrate judge] accepted the agreement of the parties rather than conducting an independent review of the evidence submitted by the parties."  *Id.* at 4 (internal quotations omitted).

Judge Ransom cited as support the circumstances and result in *Wright v. Lamas*, No. 13-CV-06420-WB, 2018 WL 2201585 (E.D. Pa. May 14, 2018), *vacated*, 2019 WL 1492208 (E.D. Pa. Apr. 3, 2019).  In that matter, Judge Streeter Lewis similarly declined to abide by a federal court's order which had directed the vacatur of Wright's judgment of sentence for first-degree murder so that he could plead guilty to third-degree murder. When the parties returned to federal court to contest Judge Streeter Lewis's refusal, the magistrate judge issued a new report and recommendation in which he specifically stated he had independently considered all of the relevant material and concluded *habeas* relief was proper as a matter of federal law.  *Wright v. Lamas*, No. 13-CV-06420-WB, 2019 WL 1496055, at *9 (E.D. Pa. Mar. 29, 2019) ("Because the Court of Common Pleas expressed doubt about whether there was a 'determination on the merits' of the petition for *habeas corpus*, I will elaborate on the legal bases for the determination made in this case.").  The District Court accepted the magistrate judge's revised report and recommendation, *see Wright*, 2019 WL 1492208, at *1, and Wright was thereafter resentenced in state court in accordance with the terms of the agreement.

Although Judge Ransom recognized the magistrate judge in the *Wright* matter was critical of Judge Streeter Lewis's approach, *see Wright*, 2019 WL 1496055, at *8 n.10 (asserting, *inter alia*, that the "authority to comply with the federal court's judgment inheres in the judgment itself, under the Supremacy Clause, whether or not a state official views the order as erroneous in some respect"), she nevertheless concluded the magistrate judge's reproach was contradicted by the holding in yet another case of the same ilk. In this respect, Judge Ransom pointed to the decision in *Wharton v. Vaughn*, 371 F. Supp. 3d 195 (E.D. Pa. 2019) (Goldberg, J.). There, Judge Goldberg stated:

> The federal statute authorizing a district court to grant *habeas* relief to a state prisoner, 28 U.S.C. [§]2254, limits a district court's authority to grant such relief. Specifically, [§]2254(a) provides, in relevant part, that "a district court shall entertain an application for a writ of *habeas corpus* . . . **only on the ground that [the state prisoner] is in custody in violation of the Constitution or laws or treaties of the United States**." (emphasis added)[.] Thus, under [§]2254, a district court's authority to grant the writ is limited to those cases in which there has been a violation of the Constitution or laws of the United States. It logically follows that a district court cannot dispense with this limitation merely because the prosecutor has now changed its position and conceded that there has been such a violation.
>
> In addition to being consistent with the plain text of [§]2254, this conclusion is supported by the cases that address the effect of a state's concession of a *habeas* claim. At least two Courts of Appeals — the Courts of Appeals for the Fifth and Seventh Circuits — have squarely addressed the question and concluded that such a concession does not relieve a court of its responsibility to consider the merits of a *habeas* claim. *See Johnson v. McCaughtry*, 265 F.3d 559, 564 (7th Cir. 2001); *Every v. Blackburn*, 781 F.2d 1138, 1140-41 (5th Cir. 1986).

*Id.* at 199 (emphasis supplied by District Court). Based on this non-binding precedent, Judge Ransom held that, as ultimately occurred in the *Wright* case, the District Court here was "required to make an independent review of the case rather than simply accept[ ] the

agreement of the parties and issu[e] a Report and Recommendation based solely on the acceptance of the agreement." Trial Court Op., 9/16/2019, at 6.[5]

Before addressing the sentencing court's order and attendant legal conclusions, we must first determine whether jurisdiction properly lies in this Court. We previously recognized that the unique procedural posture of this appeal would likely pose equally unique jurisdictional concerns, so we deferred a determination of our jurisdiction, and directed the parties to advance a developed argument on the matter, particularly given the sentencing court's conclusion that the District Court's order was issued without authority. Order, 12/9/2019, at 1 (*per curiam*). This threshold jurisdictional issue presents a question of law over which our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Kindler*, 147 A.3d 890, 893 (Pa. 2016).

Appellant forwards two plausible ways to characterize the lower court's order: (1) the District Court invalidated appellant's death sentence, but the sentencing court re-imposed it when it stated in its order that his "sentence of death stands"; or (2) the sentencing court decided the District Court had failed to comply with federal law, and on that basis refused to comply with the federal court's order and mandate, allowing the death sentence to remain in effect through its inaction. *See* Appellant's Brief at 3. Recognizing this latter view, so interpreted, would create a "strange jurisdictional beast," *id.*, appellant urges that we adopt his first proposed interpretation.

---

[5] In her opinion, Judge Ransom seemingly expressed her acknowledgment of the District Court's June 18, 2019 order directing the Department of Corrections to remove appellant from death row and staying his execution. *See id.* at 2. But, for reasons that are unclear, she made no mention at all of the District Court's footnoted, supplementary explanation that appellant's sentence of death was, in fact, "invalidated as a matter of federal law." District Court Order, 6/18/2019, at 1 n.1. In any event, we observe it makes no difference whether Judge Ransom was aware of the District Court's clarification or not because, as detailed *supra*, she had already lost jurisdiction over appellant's case by the time the District Court issued it.

Viewing Judge Streeter Lewis's order in that way — *i.e.*, as effectively re-imposing a death sentence after the federal court had vacated it — appellant argues the order triggered this Court's automatic review under 42 Pa.C.S. §9711(h)(1) ("A sentence of death shall be subject to automatic review by the Supreme Court of Pennsylvania pursuant to its rules."). *See also* Pa.R.A.P. 702, Note ("it is the imposition of the sentence of death that triggers Supreme Court direct review"). Appellant also directs us to Section 722 of the Judicial Code, which states that this Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in certain classes of cases, including "[a]utomatic review of sentences as provided by 42 Pa.C.S. §§9546(d) (relating to relief and order) and 9711(h) (relating to review of death sentence)." 42 Pa.C.S. §722(4). In appellant's view, this Court's capital precedents indicate that "the general class of cases under §722(4) includes those in which a death sentence has been imposed and has not been **conclusively** vacated." Appellant's Brief at 7 (emphasis in original), *citing Commonwealth v. Cooper*, 941 A.2d 655, 660 (Pa. 2007) ("In prior cases that involved collateral review, we have characterized matters in which a lower court vacated the death sentence as ones 'in which the death penalty has been imposed,' thus triggering our review") (citation omitted); *Commonwealth v. Bryant*, 780 A.2d 646, 648 (Pa. 2001) ("the legislature did not require that the sentence of death actually be pending in order for this Court to have jurisdiction" pursuant to 42 Pa.C.S. §9546(d)). "As in *Cooper* and *Bryant*," appellant concludes, "this appeal concerns a trial court order deciding the validity of that sentence" and so "falls squarely within the class of cases governed by §722(4)." *Id.* at 7-8.

As a backstop, appellant additionally submits that, even if the language of Sections 722(3), 9546(d), and 9711(h) is ambiguous as applied to the unusual circumstances of this case, we should still exercise exclusive jurisdiction. *See id.* at 8-9. This is so, he

argues, because "[i]n assigning exclusive review of all death penalty appeals to this Court, the Legislature's core purpose was to 'assur[e] the integrity of the capital sentencing process.'" *Id.* at 9, *quoting Commonwealth v. Graham*, 661 A.2d 1367, 1369 n.1 (Pa. 1995); *see also Commonwealth v. Appel*, 539 A.2d 780, 781 (Pa. 1988) ("automatic review by this Court in all cases in which the sentence of death has been imposed is an integral and absolutely essential procedural safeguard . . . to ensure that the sentences imposed comport with the requirements of our death penalty statute and may be legitimately executed"). Appellant posits that the unprecedented nature of the sentencing court's order heightens the need for the "essential procedural safeguard" of this Court's review because the sole question in this appeal is whether he "is under a death sentence that 'may be legitimately executed,' and the Legislature clearly intended that this Court would answer that question." Appellant's Brief at 9.

The Commonwealth is in full accord with appellant's jurisdictional argument. It adds that, by choosing not to resentence appellant, Judge Streeter Lewis disposed of the sole claim before her and precluded further proceedings on the issue, thereby rendering the order final and immediately appealable. Commonwealth's Brief at 9-10, *citing, e.g.*, Pa.R.A.P. 341(a) ("[A]n appeal may be taken as of right from any final order of a . . . trial court."). The Commonwealth further shares appellant's belief that this Court, rather than the Superior Court, is the proper forum to hear the appeal, pursuant to 42 Pa.C.S. §9711(h). It explains that "[t]his Court's capital appeal jurisdiction under [Section] 9711 exists for precisely this type of defendant — one who is actually aggrieved by the murder sentence below and whose life/death outcome is unclear." *Id.* at 11 (internal quotations omitted); *see also id.* at 7 (this Court has jurisdiction in cases "in which the finality of a defendant's sentence of death is unsettled"). *Cf. Commonwealth v. Rompilla*, 983 A.2d 1207, 1211 (Pa. 2009) (holding that Rompilla was not the type of defendant for whom this

Court's capital appeal jurisdiction exists since the trial court resentenced him to life imprisonment following a federal *habeas* grant of penalty-phase relief). Alternatively, the Commonwealth suggests it would be appropriate to exercise our King's Bench jurisdiction over this appeal to assert our supervisory powers over the common pleas court. Commonwealth's Brief at 11.

The parties rightfully recognize this case is, in more ways than one, quite peculiar. *See, e.g.*, Appellant's Brief at 3 ("This case reaches this Court in an unusual posture[.]"); Commonwealth's Brief at 11 ("Because of the unusual way the Common Pleas Court handled it, this is not a typical case."). In an effort to unpack some of those peculiarities, which will in turn aid in both our jurisdictional and substantive discussion, we find it helpful to begin by repeating some brief background on the role of federal courts and the purpose of federal collateral review of state convictions.

> [I]n 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which included a new and deferential federal *habeas* standard of review. Under 28 U.S.C. §2254(d), federal *habeas* relief may be granted to a state prisoner only if the state court's review of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts[.]" Under AEDPA, the federal court is no longer free to grant a state prisoner *habeas* relief simply because the court disagrees with a state court determination of a federal question. Moreover, a state court judgment can be said to be unreasonable under federal constitutional law only when it is measured against settled precedent from the highest court in the land.

> In contrast to the substantive standards governing federal *habeas* review of state convictions, the nature of the *habeas* remedy has remained comparatively constant. In *Fay v. Noia*, [372 U.S. 391, (1963)], the U.S. Supreme Court, per Justice Brennan, addressed the *habeas* remedy, noting that when a federal court determines that the right of personal liberty has been denied by the state and a person confined as a result, "the federal court has the power to release him . . . it has no other power; **it cannot revise the state court judgment**; it can act only on the body of the petitioner." *Id.* at [430-31] (emphasis added). Indeed, federal *habeas corpus* proceedings are civil in nature because they exist "for the

enforcement of a right to personal liberty, rather than as a stage of the state criminal proceedings or as an appeal therefrom[.]" *Id.* at [423-24]. Thus, a proper grant of federal *habeas* relief to a state prisoner does not purport to revise or interfere with the state court's criminal judgment. *Fay, supra*; *Henderson v. Frank*, 155 F.3d 159, 168 (3d Cir. 1998). Indeed, any attempt to so interfere is patent error. *See, e.g.*, *Dickerson v. Vaughn*, 90 F.3d 87, 92 (3d Cir. 1996) (district court should not directly order state court to grant defendant an appeal); *Smith v. Lucas*, 9 F.3d 359, 367 (5th Cir. 1993) (district court's directive to Mississippi state courts to impose sentence of life imprisonment did not comply with federal law); *Duhamel v. Collins*, 955 F.2d 962, 968 (5th Cir. 1992) (federal court does not have authority to commute death sentence to sentence of life imprisonment); *Magwood v. Smith*, 791 F.2d 1438, 1450 (11th Cir. 1986) (federal district court and court of appeals have no appellate authority over state court and, hence, have no authority to "remand" case to state court).

Instead, federal *habeas* directives to state authorities are designed to be coercive. Thus, the federal courts issue a "conditional" grant of the writ, which delays implementing the writ, *i.e.*, the release of the prisoner, to allow the state the opportunity to correct the perceived constitutional violation. *Henderson*, 155 F.3d at 168 ("It would seem that federal *habeas* power is limited, first, to a determination of whether there has been an improper detention by virtue of the state court judgment; and second, if [the federal court] find[s] such an illegal detention, to ordering the immediate release of the prisoner, conditioned on the state's opportunity to correct constitutional errors that [it] conclude[s] occurred in the initial proceeding."); *see also* *Smith*, 9 F.3d at 367; *Duhamel*, 955 F.2d at 968. Such indirect orders not only pay heed to the historical use of the writ and the interests of the *habeas* plaintiff, but also recognize the significant state interests at stake. As the U.S. Supreme Court explained in *Jackson v. Denno*, [378 U.S. 368, 393 (1964)], "a state defendant should have the opportunity to have all issues" tried in a state court "under appropriate state procedures." But the "State, too, has a weighty interest in having valid federal constitutional criteria applied in the administration of its criminal law by its own courts and juries." *Id.* The federal remedy should be narrowly designed to enable the state court to fulfill its constitutional obligation. *Dickerson*, 90 F.3d at 92; *see also* *Henderson*, 155 F.3d at 168 (noting "federal courts have most often granted the relief in *habeas* cases that has required the least intervention into the state criminal process."). Furthermore, once the state court or other authority timely acts to address the perceived violation forming the basis for the issuance of the conditional writ, the final writ will not issue.

*Commonwealth v. Lesko*, 15 A.3d 345, 363-65 (Pa. 2011) (emphasis in original; footnotes omitted).

Taking this background into account, we agree with the parties that the most natural understanding of what transpired in this matter is that the District Court's March 7, 2017 order vacated appellant's death sentence, which the common pleas court then effectively re-imposed through its March 20, 2019 order proclaiming that appellant's "sentence of death stands." Several proofs support this conclusion. For one, the federal magistrate judge's report plainly recommended that appellant's "sentence of death **be vacated**[.]" *Speight*, 2016 WL 8459847, at \*4 (emphasis added). Likewise, the District Court, upon adopting the magistrate's report and recommendations, explicitly stated appellant's death sentence "**is vacated**, and [he] is to be re-sentenced to a term of life imprisonment." *Speight*, 2017 WL 914907, at \*1 (emphasis added). These statements clearly demonstrate that appellant's sentence was vacated by the federal court, a practice that appears consistent with federal *habeas* principles generally.[6] *See, e.g.*, *Magwood v. Patterson*, 561 U.S. 320, 332 (2010) (where a conditional writ of *habeas* is granted, "the State may seek a **new** judgment (through a new trial or a new sentencing proceeding)") (internal quotations and citation omitted; emphasis in original); *Wilkinson v. Dotson*, 544 U.S. 74, 83 (2005) ("a case challenging a sentence seeks a prisoner's 'release' in the only pertinent sense: [i]t seeks invalidation (in whole or in part) of the judgment authorizing the prisoner's confinement"); *Sumner v. Mata*, 449 U.S. 539, 543-44 (1981)

---

[6] We say "generally" because, as Justice Todd astutely observes in her concurrence, a federal court ordinarily "does not itself alter the state judgment, but merely gives the state the opportunity to do so" through the issuance of a conditional writ. Concurring Opinion (Todd, J.) at 2. As such, there is arguably some tension between what should have occurred in this case at the federal level and what actually occurred. Nevertheless, our focus here is not on what the federal court should or should not have done, but rather on the state common pleas court's response to what the federal court actually did. In this regard, as explained above, the District Court's order plainly and unmistakably vacated appellant's sentence of death. It is for this reason we respectfully disagree with Justice Todd's position that, in this atypical situation, appellant's "death sentence remained extant" when the case returned to the state common pleas court. *Id.*

("It has long been established, as to those constitutional issues which may properly be raised under [§]2254, that even a single federal judge may overturn the judgment of the highest court of a [s]tate insofar as it deals with the application of the United States Constitution or laws[.]"); *see also* 1 Randy Hertz & James S. Liebman, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE §9.1 (7th ed. 2019) ("[F]ederal *habeas corpus* is a regime that permits the federal courts to vacate a final conviction or sentence[.]").

These statements from the federal court opinions also cut directly against the common pleas court's position that **it** had been tasked with vacating appellant's sentence. *See* Trial Court Order, 3/20/2019, at 1-2 (maintaining court of common pleas "has no authority to vacate [appellant]'s sentence" absent an independent judicial finding consistent with 28 U.S.C. §2254(d)). In fact, contrary to the common pleas court's belief, there was actually no occasion for it to vacate appellant's sentence because the District Court had already accomplished that much in 2017; all that remained was resentencing. When Judge Streeter Lewis declined to impose a new sentence and instead declared that his "sentence of death stands," *id.* at 2, we conclude that, for all practical purposes, she effectively re-imposed a sentence of death on appellant. This action constituted a final order that was immediately appealable as of right. *See* Pa.R.A.P. 341(b)(1) (a final order is any order that disposes of all claims and of all parties). And, given our interpretation of her order as discussed above, there can be no doubt appellant properly filed his appeal with this Court. *See* 42 Pa.C.S. §9711(h)(1); Pa.R.A.P. 702, Note; 42 Pa.C.S. §722(4).[7]

---

[7] Our jurisdiction over this matter is further supported by our prior jurisprudence in this arena. As the parties persuasively offer, our precedents involving other complex jurisdictional questions in death penalty cases are in harmony insofar as they can broadly be understood as permitting a direct appeal to this Court in situations where a death sentence has been imposed and not conclusively vacated. *Compare Kindler*, 147 A.3d at 893-94 (Court lacked jurisdiction to entertain direct appeal from interlocutory orders

Having resolved the threshold jurisdictional issue, we now turn to the merits. The parties' arguments again proceed in lock-step. Both principally rely on the Supremacy Clause of the United States Constitution, which provides, in pertinent part: "This Constitution, and the Laws of the United States . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI, cl. 2. More to the point, the parties assert that under the Supremacy Clause, the state common pleas court was duty-bound to respect and obey the District Court's judgment invalidating appellant's death sentence. *See, e.g.*, Appellant's Brief at 20-21, *citing Cooper v. Aaron*, 358 U.S. 1, 18 (1958) (supremacy of federal law is "a permanent and indispensable feature of our constitutional system" and federal court orders have "binding effect on the States"); *accord* Commonwealth's Brief at 17.

As the parties see it, this principle holds true "[e]ven where a state court or other state official believes that a federal court lacked jurisdiction, issued an erroneous order, resolved a case pursuant to the parties' agreement, or requires action contrary to state law[.]" Appellant's Brief at 23; *see also* Commonwealth's Brief at 16 ("[t]he obligation to give effect to and enforce the District Court's order does not depend on whether the [state

---

entered in criminal case on remand for resentencing after federal court vacated Kindler's death sentence; "if a defendant has not been sentenced to death, this Court has no jurisdiction under Subsection 9711(h) to consider in the first instance an appeal from an order or judgment entered in a criminal prosecution") *and Rompilla*, 983 A.2d at 1211 (the "statutory reference to a 'sentence of death[ ]' [in Section 9711(h)] . . . plainly does not encompass cases in which the death penalty was imposed at one time but subsequently was vacated and a judgment of sentence of life imprisonment was imposed") *with Cooper*, 941 A.2d at 660 (applying *Bryant*'s holding and concluding the Court's jurisdiction over a direct appeal was proper where the trial court vacated Cooper's death sentence and the Commonwealth sought to have it re-imposed). Here, notwithstanding the District Court's order, because of the uncertainty caused by Judge Streeter Lewis's pronouncement that appellant's "sentence of death stands," we cannot say that appellant's death sentence has been conclusively vacated, as in *Kindler* and *Rompilla*; if anything, the unique circumstances presented are more akin to those in *Cooper*.

court], in its own judgment, agrees with it"), *citing Washington v. Fishing Vessel Ass'n*, 443 U.S. 658, 695-96 (1979) ("State-law prohibition against compliance with the District Court's decree cannot survive the command of the Supremacy Clause of the United States Constitution"; "[e]ven if those orders may have been erroneous in some respects, all parties have an unequivocal obligation to obey them while they remain in effect."). To bolster this position, appellant stresses that "[s]tate courts do not have any expertise in deciding if federal courts got the complex process of federal *habeas* review wrong." Appellant's Brief at 25; *see id.* ("the lower court's attempt to grade the work of the federal court took it into uncharted seas that it was ill-equipped to navigate").

Initially, we conclude there is no need to wade into the general issue of, as the lower court framed it, whether "the Supremacy Clause obligate[s] a state court to abide by an order of the District Court where the District Court has failed to follow the requirements of 28 U.S.C.A. §2254(d)(1)(2)?" Trial Court Op., 9/16/2019, at 2. Simply put, that is not the situation before us. On the contrary, as the District Court made clear by its June 18, 2019 order, it vacated appellant's death sentence as a matter of federal law, as mandated by Section 2254(d). *See* District Court Order, 6/18/2019, at 1 n.1 ("A reasonable reading of this Court's March 7, 2017 Memorandum Opinion and Order shows that [appellant]'s sentence of death was invalidated as a matter of federal law."); *Speight*, 2017 WL 914907, at *1 (District Court stating it had made "a thorough and independent review of the state record [and] the relevant court filings"); *see also* Appellant's Brief at 25 ("[t]he exhaustive briefing and extended proceedings in this case . . . belie the [lower court's] suggestion that the District Court failed to make an 'independent judicial determination' of constitutional error").[8]

---

[8] Justice Mundy expresses a concern that the District Court may not have actually engaged in an independent review of the legal questions raised in appellant's *habeas* petition — particularly since it "did not explain what federal laws were violated or how they

We recognize, of course, that Judge Streeter Lewis did not have the benefit of the District Court's later explanation when she entered her order on March 20, 2019, and she retired from the bench only weeks later. Moreover, by the time the District Court entered its clarifying order, Judge Ransom, who had taken over the case from Judge Streeter Lewis, was powerless to act on that new information — assuming she was even aware of it in the first place. *See supra* at n.5. Nevertheless, we are compelled to conclude that Judge Streeter Lewis's order, as well as Judge Ransom's opinion, both erroneously (though perhaps understandably) presumed the District Court's order was premised on nothing more than the agreement of the parties. In that same vein, and even more importantly, we conclude both jurists incorrectly considered the central issue before them was whether they had the authority to vacate appellant's death sentence. As we have explained, the District Court had already vacated appellant's death sentence, and the state common pleas court's only task at that juncture was to resentence him. The court declined to do so because it misapprehended the basis for the District Court's order granting *habeas* relief, just as it misunderstood the order's effect. Since those errors formed the entire basis for the lower court's decision, we vacate its order and remand for resentencing.[9]

---

were violated[.]" *See* Concurring Opinion (Mundy, J.) at 4. Respectfully, we are aware of no requirement imposed on a federal district court to explicitly state in its order the specific ground upon which relief is granted. *Cf.* 28 U.S.C. §636(b)(1)(C) ("A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."). Nor are we presently willing to second-guess the District Court's clear statement that appellant's "sentence of death was invalidated as a matter of federal law." District Court Order, 6/18/2019, at 1 n.1.

[9] Given our disposition, we render no judgment on any of the constitutional arguments pressed by the parties.

Chief Justice Baer and Justices Saylor, Donohue and Wecht join the opinion.

Justices Todd and Mundy file concurring opinions.